CREWS, JOHN J., Associate Judge.
The cause below was commenced by ap-pellees, seeking the cancellation of a note and mortgage on grounds of satisfaction. The appellants filed a counterclaim seeking foreclosure and a third-party complaint joining Tallahassee Federal Savings and Loan Association, alleging that a mortgage executed by the appellees to that institution was inferior to the lien of the appellants. The court denied appellants’ prayer that *30 their mortgage be declared a first lien on the property, denied its foreclosure, and order the clerk of the circuit court, upon payment of $1,000.00 plus interest into the registry of the court found to be due the appellants, to cancel and discharge the mortgage as given by Fat Man’s Bar-B-Que of Tallahassee, Inc., to A. J. Davis and his wife. The court, by its judgment, dismissed the counterclaim of the appellants. Thereupon this appeal ensued.
The pertinent facts are as follows:
At all times material, appellant-A. J. Davis together with three other individuals were the officers, directors, and the four stockholders of Fat Man’s Bar-B-Que Systems, Inc., that sold franchising rights to operate Fat Man’s Bar-B-Que restaurants including appellee-corporation which had the same officers and directors. Gwendolyn F. Davis was neither an officer nor director of appellee-corporation nor was she in any way officially connected with the former which was the parent corporation.
In February, 1970, A. J. Davis and his wife, Gwendolyn F. Davis, sold real property held by the entirety to Fat Man’s Bar-B-Que of Tallahassee, Inc., and in October, 1970, were given a note by the ven-dee in the principal amount of $15,201.87 payable to them jointly. The note was secured by a mortgage which was duly recorded in the official record book of Leon County, Florida. On October 4, 1971, Fat Man’s Bar-B-Que of Tallahassee, Inc., consummated permanent financing on the property with Tallahassee Federal, giving a note for $64,000.00, which note was secured by a mortgage deed and was personally endorsed by the four principal stockholders and officers of the mortgagor corporation.
Subsequent to the arranging of the permanent financing, the four principal stockholders and officers engaged in certain transactions which included a claim setoff by three of the stockholders against Andrew J. Davis in the amount of $8,728.40 growing out of certain loans and services contributed by the other stockholders allegedly in excess of those contributed by Davis. Fat Man’s Systems, Inc., delivered to Andrew J. Davis a check payable to him alone in the amount of $7,729.58 which it alleged to be the amount due after credits for setoffs growing out of other business dealings at other locations operated by Fat Man’s Systems, Inc. Davis accepted the check as part payment, but both he and his wife, on separate occasions, refused to execute a satisfaction of the mortage until the entire amount was paid. The above-described actions followed. ■
The primary issue to be determined is whether the setoff of a husband’s debt owed solely by the mortgagee-husband to the mortgagor is sufficient to satisfy the mortgagor’s obligation on mortgaged property purchased from mortgagees who held it in an estate by the entirety, the wife having failed to agree to such setoff. Answering this issue in the negative, we reverse.
In Richart v. Roper, (1946) 156 Fla. 822, 25 So.2d 80, a county judge held a lease agreement unenforceable because the property was held by appellees as tenants by the entirety and the lease agreement was not executed by both of them. Appellant, appealing from the dismissal of a complaint in the circuit court praying for an injunction to restrain enforcement of the judgment, contended the wife should not be permitted to claim this defense because she had left the management of the property to the husband and he had consistently exercised authority over it.
In upholding the decision of the lower court, the Supreme Court stated:
“It may be true that the husband was the general manager of the property and looked after the rents and upkeep, but in a long line of decisions beginning with Ohio Butterine Co. et al. v. Hargrave, 79 Fla. 458, 84 So. 376, and concluding with Berlin v. Jacobs et al., [156 Fla. 773] 24 So.2d 717, this court has held that on ac *31 count of the unity of interest of husband and wife in an estate by the entireties neither could sell, lease or contract for the disposition of it without the joint consent and agreement of the other to do so.”
Appellees, however, find solace in the conclusion of the court which in its order found:
“ . . . At all times during these transactions all business dealings of A. J. Davis and his wife were handled by A. J. Davis. She was in agreement with and allowed him to manage the business affairs for them both. His acts were therefore her acts as her agent.
We have carefully reviewed the entire transcript of trial proceedings and find that the conclusion, supra, is without sufficient competent evidence to support it.
The record fails to disclose that Andrew J. Davis ever exercised independent control as an agent or otherwise of any separate property belonging to his wife, and, as pointed out supra, Gwendolyn F. Davis was a complete stranger to' Fat Man’s Systems, Inc., and Fat Man’s BarB-Que of Tallahassee, Inc. She at no time guaranteed her husband’s obligations or had any obligations of her own to either of those corporations.
She was active with her husband in the selection of the site in Tallahassee, actively participated with him in the operation of the business before it was sold, and assisted him in the operation of a bar-b-que business in Titusville. She also helped in setting up a franchise business owned by Fat Man’s Systems, Inc., in Orlando and Tampa. As previously noted, the satisfaction of mortgage was tendered to her, but she refused to sign it. There being an insufficiency of facts to support the finding of the learned trial judge, the note secured by a mortgage constituting a tenancy by the entirety was of such a nature that her signature on the satisfaction was essential to the alienation of her interests therein, Richart v. Roper, supra.
Though not cited by either of the parties in their briefs, we have considered Winston v. J. D. Gramm, Inc., (Fla.App. 1973) 277 So.2d 59, but find it inapplicable to the facts in the case sub judice.
The able trial judge was manifestly motivated by equitable considerations when he concluded in his final judgment:
“. . .To allow this mortgage between principals of the plaintiff corporation to remain outstanding as a mortgage superior in dignity to the Tallahassee Federal mortgage and to foreclose same, would be unconscionable. All of these principal stockholders and officers of the plaintiff corporation were under a duty to disclose to Tallahassee Federal the existence of the prior mortgage. While the duty of Nants, who handled the loan closing, was greater than the duty of Davis, they all had the duty not to accept the proceeds of the loan without such disclosure.”
In his zeal, however, to follow his good conscience, he was persuaded to overlook the fact that both appellants always expected to be paid in full at the Tallahassee Federal closing. They had deposited an executed satisfaction with their bank to be delivered upon payment at such time; Gwendolyn F. Davis never participated in the loan negotiation with Tallahassee Federal, while Mr. Davis was in Nevada at the time of the closing.
Reversed and remanded for further proceedings consistent herewith.
WIGGINTON, Acting C. J„ and SPEC-TOR, J., concur.